## Kloskowski et ux. *v.* Hudson Coal Company, Appellant.

Argued March 8, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Rudolph S. Houck,* with him *John P. Kelly* and *Thomas L. Ennis,* for appellant.

*Roger J. Dever,* for appellee.

OPINION BY CUNNINGHAM, J., April 13, 1938:

On September 16, 1936, Peter Kloskowski, twenty-eight years of age, unmarried and living at home with his parents, Michael and Josephine Kloskowski, appellees herein, was accidentally and fatally injured during the course of his employment as a laborer in one of the collieries of the defendant coal company. Shortly thereafter his parents, invoking the provisions of Section 307 of our Workmen's Compensation Act of June 2, 1915, P. L. 736, as finally amended April 26, 1929, P. L. 829, 77 PS § 561, filed with the board their claim-petition for the maximum compensation allowance thereunder—$10 per week during the prescribed period of 300 weeks—upon the ground that they were "totally dependent upon the deceased employee at the time of the accident."

The averment in the petition that the decedent's weekly wages at the time of his death approximated $30 was not controverted. In its answer the defendant admitted appellees were "partially" dependent upon the earnings of their son, and offered to execute an agreement for the payment of compensation at the rate of $5 per week. The sole issue, therefore, before the compensation authorities was whether appellees were "totally" dependent within the meaning of the statute.

The statutory provisions here involved read: "If there be neither widow, widower, nor children entitled to compensation, then to the father or mother, if dependent to any extent upon the employee at the time of the accident, twenty-five per centum of wages, but not in excess of five dollars per week: Provided, however, That in the case of a minor child who has been contributing to his parents, the dependency of said parents shall be presumed: And provided further, That

if the father or mother was totally dependent upon the deceased employee at the time of the accident, the compensation payable to such father or mother shall be forty-five per centum of wages, but not in excess of ten dollars per week."

In view of the admission by the defendant of partial dependency, appellees had the burden of justifying their refusal of the tendered agreement by showing they were totally dependent.

There was competent testimony before the referee that the family at the time of decedent's death consisted of his father, sixty years of age but who was then, and for a period of four years prior thereto had been, unable to work by reason of illness, his mother, two young sisters—Celia, thirteen years of age, and Helen, nine— and a recently married adult sister, who with her husband lived in the family home hereinafter referred to. This daughter had been employed from time to time in a silk mill, but testified she had been unable to earn more than enough to clothe herself and had not been working during the five months preceding the death of her brother. Her husband was, as we understand the testimony, employed at the colliery and earned $81 during September, 1936. The testimony indicates the sister and her husband contemplated going to housekeeping in a home of their own, but they were still living with appellees at the time of the hearing in December, 1936.

Josephine Kloskowski testified the decedent turned over to her all his earnings and she managed the affairs of the household. While not very definite in several particulars, her testimony shows her monthly expenditures approximated $105, a sum within the indicated earnings of decedent. The testimony is not clear with respect to the monthly amounts payable for life and fire insurance, but it appears that $300 was collected

under a policy insuring the life of decedent and that $150 was paid by defendant toward funeral expenses.

The principal difficulty in the case arises out of the fact that appellees are shown by the record to be the owners by entireties of an unencumbered, two-story, nine-roomed, dwelling house, equipped with electricity, running water, bathroom, etc., erected upon a lot 50 x 150 feet at No. 300 Gorham Street, Mayfield Borough, but neither side introduced any testimony relative to either the market, assessed or rental, value of this property. The only finding of fact made upon this feature of the case by the referee reads: "6. Claimants own their own home and it is free of debt." Without any discussion of this factor in the case, the referee made a finding of total dependency and an award of compensation against the defendant at the rate of $10 per week for 300 weeks beginning September 24, 1936, with interest, etc. Upon defendant's appeal to the board the findings of the referee were adopted and the award affirmed.

On the question of the ownership of the real estate the board said: "We do not see why the fact that the claimants owned their own home should affect the referee's finding of total dependency. Although a home may have a rental value, the maintenance of it also incurs expenses, such as fire insurance and taxes, which were taken care of out of the earnings of the decedent, Peter."

Defendant's appeal to the common pleas was dismissed by that tribunal and we now have this appeal from the judgment entered upon the award. We feel, upon a review of this record, that the parties failed to produce all the available evidence, and that the referee and board failed to make findings upon material matters sufficiently definite to enable either the court below or this court to decide the questions of law here involved.

As was pointed out by this court in *Feldman v. Pub. Co. et al.*, 122 Pa. Superior Ct. 491, 186 A. 308, a finding of the extent of dependency becomes a mixed question of law and fact, as it involves the legal meaning of the phrase "totally dependent" as used in the statute. Where, as here, dependency is admitted, its extent primarily depends upon the facts of each individual case and no general rule applicable to all cases can be laid down. Reference is made by the court below and in the briefs to several decided cases—*Kovatch et ux. v. Durkin et al.*, 116 Pa. Superior Ct. 192, 176 A. 507, and *Fawson v. Sterrick Creek Coal Co.*, 129 Pa. Superior Ct. 245, 195 A. 165. Each of these cases is somewhat similar to the case now in hand but neither of them is controlling.

In the Kovatch case we affirmed the action of the court below in reducing an award for total dependency to one for partial, largely because the evidence showed the parents owned an unencumbered home, assessed at $4,500, and also indicated that the wages of the deceased son were only about one-half of the living expenses of the family. Moreover, there were other children, some of whom could contribute, if necessary, to the support of the parents.

In the Fawson case the appeal was by a widowed mother from an affirmance by the court below of an award for partial dependency. The record disclosed the claimant lived with a married son and his wife and a daughter, eighteen years of age, in an unencumbered property worth from $2,000 to $2,500. It also appeared in that case that the employee's wages were only $24 per week while the household expenditures amounted to approximately $40. In each of these cases there was evidence relative to the value of the real estate.

In the course of the opinion written for the court below by HOBAN, J., the following paragraphs are not only

pertinent, but demonstrate the difficulty of deciding the question of law arising upon this record. "Unless, therefore, we are prepared to say that the mere ownership of a dwelling house by claimants is sufficient, *without evidence of value* or of means to maintain a household, to destroy the idea of total dependency, when every other fact in the case would support such a finding, we must affirm the decision of the board. ......Are we to say that in the *absence of evidence showing that the dwelling was of substantial value,* the owners are required to move out and rent for the sake of an income, or are required to sell and maintain themselves on the proceeds of such sale until they are exhausted?" (Italics supplied)

We think the phrase "totally dependent," as used by the legislature, is equivalent to "without any other source of income or livelihood." We agree that a court should not lay down, as applicable to all cases, a rule that "mere ownership" of a dwelling house is sufficient, without evidence of its condition of repair, availability, in whole or in part, for rental purposes, market value, assessed value, and other material facts, to negative the idea of total dependency. The opinion of the court below emphasizes the absence in this case of evidence upon these material points. When this lack of evidence, and the absence of specific findings based thereon, became apparent, we think the proper procedure in the court below would have been to "remit the record to the board for more specific findings of fact" upon these important aspects of the case, as is authorized by section 427 of the statute, as amended, 77 PS § 877.

With relation to other sources of income, it may be noted that while appellees' son-in-law, who apparently has a considerable earning capacity, may not be legally liable to contribute toward their maintenance, they are under no legal obligation to permit their married

daughter and her husband to occupy a portion of the house without paying any rent. A proper subject of inquiry in this case is whether a part of this nine-roomed house could be made a source of income to appellees.

The judgment is vacated and the record returned to the court below to the end that it may be by that court remitted to the board for more specific findings of fact.